**[J-64-2025]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 50 EAP 2024 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court entered on September 7, 2023, |
| | : | at No. 538 EDA 2022, affirming the |
| v. | : | Order of the Court of Common Pleas |
| | : | of Philadelphia County, Criminal |
| | : | Division, entered on January 27, 2022, |
| PHILLIP SHIVERS, | : | at No. CP-51-CR-0005546-2019. |
| | : | |
| Appellant | : | ARGUED: September 10, 2025 |
| | : | |
| | : | |

**OPINION**

**JUSTICE DOUGHERTY**                                    **DECIDED: July 21, 2026**

In the seminal decision in *Terry v. Ohio*, 392 U.S. 1 (1968), the United States Supreme Court held the police may, consistent with the Fourth Amendment to the United States Constitution,[1] subject a person to an investigative detention, what is often referred to as a "*Terry* stop" or simply a "stop," if they have reasonable suspicion "criminal activity may be afoot[.]" *Id.* at 30. In *Illinois v. Wardlow*, 528 U.S. 119 (2000), the Supreme Court held an individual's "unprovoked flight" from the police in a "high[-]crime area" established reasonable suspicion for a stop. *Id.* at 124-25. Presently, appellant Phillip Shivers argues this Court should reject *Wardlow* under Article I, Section 8 of the Pennsylvania

---

[1] U.S. CONST. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.").

Constitution,[2] the Pennsylvania counterpart to the Fourth Amendment, and hold that flight in a high-crime area by itself does not provide the requisite reasonable suspicion for a stop under Article I, Section 8. This is what is known as a "departure claim" — a claim that the meaning of a provision of the Pennsylvania Constitution departs from its equivalent in the United States Constitution, and that the state provision offers greater protections than its federal analog. *See Commonwealth v. Bishop*, 217 A.3d 833, 842 (Pa. 2019). In *Bishop*, this Court adopted a framework for preserving departure claims in the trial court on pain of waiver. Shivers did not comply with *Bishop*. Accordingly, his departure claim is waived, and for this reason we affirm the order of the Superior Court.

In July of 2019, Officer Michael Sidebotham was a police officer in the 35th Police District in Philadelphia. He had been working as a police officer in the district for eleven years and was the gang intelligence officer for the district. On July 18, 2019, Officer Sidebotham, together with Officers Ryan Del Ricci and Patrick Lutz, drove in an unmarked police car to a gas station located at 5945 North Front Street. The gas station was a hangout and base of operations for the Ozone Gang, a gang known for gun violence and drug activity which was feuding with two other gangs in the area. When the police arrived at the gas station, Shivers was sitting in front of the door to the gas station. He was seated to the right of four or five other men, two of whom were known members of the Ozone Gang. The officers, who were in uniform, exited their car and walked towards Shivers. At that point, Shivers turned and ran through a parking lot and then southbound on Front Street. As he ran, Shivers had his hands in front of him as if he were holding his

---

[2] PA. CONST. art. I, §8 ("The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.").

pants up or holding a gun. Officers Sidebotham and Lutz chased him. Officer Lutz tackled Shivers, and Officer Sidebotham seized a loaded gun from his front pants pocket.

The Commonwealth charged Shivers with possession of a firearm by a prohibited person, carrying a firearm without a license, carrying a firearm in public in Philadelphia, resisting arrest, and providing false identification to law enforcement.[3]  Following a preliminary hearing, the case was held for court. Shivers filed an omnibus pretrial motion. The motion was a form with blanks which can be checked to specify the nature of the claims being raised. Shivers checked blanks indicating he was seeking the suppression of physical evidence. In addition, he checked blanks claiming his arrest was illegal; he was arrested without probable cause; he was subjected to a stop and frisk on less than reasonable suspicion; he was arrested without a lawfully issued warrant or other legal justification; the search was without a warrant; and the search was conducted without probable cause. The section of the form motion pertaining to the suppression of evidence included preprinted language providing that "[t]he evidence was obtained in violation of the defendant's U.S. Constitutional rights or independently protected rights secured by the Pennsylvania Constitution or Pennsylvania Rules of Criminal Procedure[.]" Omnibus Motion, 9/19/19, at 1 (unpaginated).

In addition to his suppression motion, Shivers also filed a motion to compel. This motion anticipated the Commonwealth would present evidence he was present in a high-crime area at the suppression hearing. Accordingly, the motion requested objective and verifiable evidence that the area in question was in fact a high-crime area. Alternatively, Shivers contended that if the Commonwealth was "unable or unwilling" to produce such evidence, "the court should preclude the introduction of the testimony" of high-crime area. Motion to Compel Evidence Relating to "High Crime Area," or, in the Alternative, Preclude

---

[3] *See* 18 Pa.C.S. §§6105, 6106, 6108, 5104, and 4914, respectively.

Testimony of High Crime Area (Motion to Compel), 12/4/19, at ¶3. Shivers's motion to compel noted:

> Prior to the United States Supreme Court's decision in *Illinois v. Wardlow*, 528 U.S. 119 (2000), Pennsylvania Courts had specifically held that flight in a high[-]crime area alone was not a sufficient basis for reasonable suspicion. *See, e.g.*, *In the Interest of D.M.*, 743 A.2d 422 (Pa. [1999]) (remanded post-*Wardlow* and reversed, *In the Interest of D.M.*, 781 A.2d 1161 ([Pa.] 2001)). Since that time, "high[-]crime areas" have become a fact of constitutional law and the term can now transform an unconstitutional seizure into a constitutional one merely by its invocation without any additional evidence save the testifying officer's subjective opinion.

Motion to Compel at ¶6. At the hearing on the motion, Shivers argued:

> [B]ecause we know that the Philadelphia Police Department actually compiles and keeps data and statistics on what crimes are committed in what portions of the city, granularity to actual blocks, it's our position that this phrase — because it has a Constitutional legal meaning now — needs to be backed up with some sort of evidence, otherwise, it is just a suggestive opinion, and that is dangerous to everybody's Constitutional rights under the Fourth Amendment and Article [I], Section 8 of the Pennsylvania Constitution, in the sense that by somebody's objective — subjective opinion about whether or not an area is, in fact, high crime, suddenly allows a previously unconstitutional seizure to become constitutional.

N.T. Motion to Compel Hearing, 1/10/20, at 5.

Following the denial of Shivers's motion to compel, there was a hearing on his motion to suppress. At the beginning of the hearing, Shivers was asked to state the basis for his motion. He responded:

> Defense brings this motion to suppress under the 4th and the 14th Amendments of the U.S. Constitution as well as the broader protections of the Pennsylvania Constitution, Article One Section Eight. Defense averts [sic] that there was no justification for the stop, frisk, search, or arrest of Mr. Shivers, and that the Commonwealth lacked any probable cause or reasonable suspicion. Namely, Your Honor, we're seeking to suppress a firearm.

N.T. Suppression Hearing, 11/16/20, at 3-4.

Thereafter, the Commonwealth presented the testimony of Officer Sidebotham. At the conclusion of the testimony, the Commonwealth argued the police had reasonable

suspicion to stop Shivers because "[w]e have a high-crime area and an unprovoked flight." *Id.* at 25; *see also id.* at 24-25 ("They went after this defendant because he ran in a high-crime area."); *id.* at 25 ("Flight in a high-crime area gives them the right to do that."). Shivers did not advocate that flight in a high-crime area should not suffice to support reasonable suspicion under Article I, Section 8 as a legal matter. Instead, he argued the police had no "legal justification" to approach, chase, stop, or frisk him, and that because he had "never met" Officer Sidebotham and the officer "had no information about him," the officer's "testimony about gang affiliation and it being a high-crime area . . . had nothing to do with" him. *Id.* at 22-24.

At a subsequent listing, the suppression court denied suppression on the grounds Shivers's "unprovoked flight in a high[-]crime area gave the officers reasonable suspicion to pursue and stop him." N.T. Motions Hearing, 2/10/21, at 6. Shivers raised no objection to the court's legal determination that his flight in a high-crime area was sufficient to establish reasonable suspicion.

Following a bench trial, the trial court convicted Shivers of all charges. The court sentenced him to an aggregate term of three years' probation. Shivers appealed. In his court-ordered concise statement of the errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), he pertinently claimed:

> This [c]ourt violated [Shivers's] rights under Article I, Section 8 of [sic] Pennsylvania Constitution by holding that police had reasonable suspicion to seize [Shivers] by chasing and tackling him merely because he fled from them in a so-called high[-]crime area. That the seizure occurred in a high[-]crime area should be irrelevant under the Pennsylvania Constitution because that factor unreasonably denies citizens living in those areas the same search and seizure protections of those who are fortunate enough to live in areas with less crime. Further, "high[-]crime area" is a vague factor incapable of an acceptable nonarbitrary factual determination necessary to determine an individual's constitutional rights. The Pennsylvania Constitution is more protective than the U.S. Constitution in protecting individuals from unwanted intrusion by police particularly those involving

seizure of the person. *See, e.g.*, *Commonwealth v. Matos*, 672 A.2d 767 (Pa. 1996).

Statement of Errors Complained of on Appeal, 3/21/22, at ¶7iii. In its opinion, the trial court concluded this claim "conflict[ed] with Pennsylvania law." Trial Court Op., 4/14/22, at 6.

In his brief for appellant in the Superior Court, Shivers raised the issue: "Was there not a lack of reasonable suspicion to justify a seizure under Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment based solely on the flight in this case in a high[-]crime area?" Shivers's Brief for Appellant in Superior Court at 3 (capitalization omitted). In support of this issue, he claimed that the court "should reject *Wardlow*'s holding under Article I, Section 8." *Id.* at 7; *see also id.* at 9 ("[T]his [c]ourt should reject the *Wardlow* conclusion on Article I, Section 8 grounds[.]"); *id.* at 11 ("[T]he [c]ourt . . . should reject *Wardlow* under Article I, Section 8[.]"); *id.* at 31 ("Because flight and high[-]crime area are, at best, both weak factors in the individualized reasonable suspicion of criminal conduct analysis, this [c]ourt should reject *Wardlow* under Article I, Section 8."). The Commonwealth responded that it was "not clear" Shivers "properly preserved" his departure claim under *Bishop* and, in any case, the claim was "meritless[.]" Commonwealth's Brief for Appellee in Superior Court at 9 n.1.

The Superior Court unanimously affirmed the judgment of sentence in an unpublished decision. The panel reasoned it was "bound to follow [this Court's] clear adoption of *Wardlow* for state constitutional purposes" in *In re D.M.*, 781 A.2d 1161 (Pa. 2001). *Commonwealth v. Shivers*, 538 EDA 2022, 2023 WL 5771571, at *3 (Pa. Super. Sept. 7, 2023) (unpublished memorandum).

This Court granted Shivers's petition for allowance of appeal on the following rephrased issue: "Because flight alone by an individual at the sight of police does not provide the necessary reasonable suspicion of criminal activity for a stop, does it violate

Article I, Section 8 to hold that there is reasonable suspicion based solely on the location of the flight in a 'high[-]crime area,' a factor that involves no additional conduct by the person police pursue and stop?" *Commonwealth v. Shivers*, 322 A.3d 879 (Pa. 2024) (*per curiam*). In addition, we directed the parties "to address in their merits briefs whether . . . Shivers preserved his departure claim in light of" *Bishop* and *Commonwealth v. Alexander*, 243 A.3d 177 (Pa. 2020). *Id.* (quotation marks omitted).[4]

"The issue of waiver is a legal one over which our review is plenary." *Bishop*, 217 A.3d at 838 n.2. Shivers maintains his departure claim is not waived. He argues "[r]easons were provided in the lower court for a departure under Pennsylvania's Constitution, the Commonwealth was put on notice, and it contested the claim." Shivers's Brief at 42. In addition, he insists that "[f]or twenty years the Superior Court has rejected the Article I, Section 8 claim presented here." *Id.* at 42-43, *citing Commonwealth v. Jefferson*, 853 A.2d 404 (Pa. Super. 2004).[5] According to Shivers, "[b]ecause the lower courts have no authority to 'correct' a ruling that is compelled by a higher court decision,

---

[4] Because we resolve this appeal based on waiver, the remainder of our opinion is limited to the second issue of whether Shivers properly preserved his departure claim in the trial court. We do not further discuss the first, substantive issue of whether flight in a high-crime area is sufficient to establish reasonable suspicion under Article I, Section 8 of the Pennsylvania Constitution, and offer no view on this constitutional question. Our learned colleague "think[s] it is unfortunate that judicial resources have been wasted in this matter by searching for waiver." Concurring and Dissenting Opinion at 2 (Donohue, J.). However, "it has long been the policy of this Court to avoid constitutional questions where a matter can be decided on alternative, non-constitutional grounds." *Commonwealth v. Janssen Pharmaceutica, Inc.*, 8 A.3d 267, 271 (Pa. 2010); *see also Commonwealth v. Karetny*, 880 A.2d 505, 519 (Pa. 2005) ("[T]his Court seeks to avoid constitutional issues if the claim may be resolved on alternative grounds[.]"). Moreover, Justice Donohue herself finds "waiver" and accordingly "would dismiss the appeal as improvidently granted." Concurring and Dissenting Opinion at 5 (Donohue, J.). Why our finding of waiver is "unfortunate" and "waste[ful]" but hers is not is not explained. *Id.* at 2.

[5] In *Jefferson*, the Superior Court concluded this Court in *D.M.* "adopted the rationale of *Wardlow* for state constitutional purposes[,]" and accordingly the appellant's flight in a high-crime area "established reasonable suspicion under both federal and state principles." 853 A.2d at 407.

issue identification . . . should always be sufficient in a case like this." *Id.* at 44. He contends "[t]his case presents a question of waiver in substantially the same context" as *Alexander*, where the defendant filed "a pre-printed omnibus motion" and argued he was relying on the "broader protections" of Article I, Section 8. *Id.* at 43, *quoting Alexander*, 243 A.3d at 193 n.8. Shivers emphasizes the trial court addressed his departure claim "on the merits" in its opinion, and the Superior Court did the same. *Id.* at 47.

The Commonwealth responds that Shivers waived his departure claim. It contends Shivers "failed to comply with *Bishop*'s requirements for preserving a departure claim." Commonwealth's Brief at 13. The Commonwealth asserts Shivers's suppression motion and arguments at the suppression hearing "merely cited **every** conceivably relevant state and federal constitutional provision and recited the words 'stop, frisk, search, seizure, arrest, reasonable suspicion, probable cause, and warrant,' without identifying a claim that this Court should overturn its settled precedent holding that unprovoked flight in a high-crime area may give rise to reasonable suspicion under Article I, Section 8 of the Pennsylvania Constitution." *Id.* at 15 (emphasis in original). It argues that "[i]f such boilerplate language were sufficient to preserve the highly specific departure claim raised here, the exact same language would be sufficient to preserve any departure claim involving the suppression of physical evidence." *Id.* at 15-16. The Commonwealth notes as well that Shivers's motion to compel "did not mention the departure claim raised in this appeal, which presupposes that the unprovoked flight occurred in a high-crime area." *Id.* at 15 n.2. Regarding Shivers's reliance on *Alexander*, "[t]he Commonwealth respectfully submits that it is difficult to reconcile *Alexander*'s approach to the preservation issue with the exacting requirements that this Court carefully laid out the year before in *Bishop*, where this Court had specifically focused on the proper roadmap for the preservation of such claims." *Id.* at 10-11. However, the Commonwealth finds it "notable that *Alexander*

did not, as [Shivers] seeks to do here, overrule many years of consistent precedent applying the Fourth Amendment and Article I, Section 8 coterminously to a particular type of seizure." *Id.* at 12 n.1.

In his reply brief, Shivers claims "[t]he Commonwealth ignores the very different contexts of *Bishop* and *Alexander* that called for the Court's treating the waiver issue differently in those two cases." Shivers's Reply Brief at 1. He asserts that in *Alexander*, as in this case, there was "settled precedent" precluding the trial court from ruling in the defendant's favor. *Id.* at 2, *quoting* Commonwealth's Brief at 17. "In sharp contrast," Shivers submits, "*Bishop* involved a Pennsylvania constitutional claim of first impression in this Commonwealth that would have obligated the lower court to decide the issue, with the defendant perhaps prevailing." *Id.*[6]

Pennsylvania takes "a stricter approach to waiver than pertains in many other jurisdictions[.]" *Bishop*, 217 A.3d at 840 n.6. For instance, more than half a century ago, this Court abrogated the basic and fundamental error doctrine, pursuant to which an appellate court must consider errors claimed to be basic and fundamental despite the absence of a specific objection in the trial court, in both civil and criminal cases. *See Dilliplaine v. Lehigh Valley Tr. Co.*, 322 A.2d 114, 117 (Pa. 1974) ("We conclude that basic and fundamental error has no place in our modern system of jurisprudence."); *Commonwealth v. Clair*, 326 A.2d 272, 274 (Pa. 1974) ("[N]o longer will allegations of basic and fundamental error serve to enable parties in criminal matters to seek reversal on alleged errors not properly raised below."). Rather, it is long enshrined in our Rules of Appellate Procedure that "[i]ssues not raised in the trial court are waived and cannot be

---

[6] The American Civil Liberties Union (ACLU) and ACLU of Pennsylvania have filed an *amici curiae* brief in support of Shivers. In addition, the Pennsylvania District Attorneys Association and the Office of Attorney General of Pennsylvania (OAG), have each filed *amicus* briefs in support of the Commonwealth. Only the OAG has addressed the waiver question, and it agrees with the Commonwealth that Shivers's departure claim is waived.

raised for the first time on appeal." Pa.R.A.P. 302(a). Requiring issue preservation in the trial court promotes the effective administration of justice. Among other things, it encourages alert and diligent advocacy, provides the opposing party the opportunity to respond, provides fair notice to the trial court, allows for prompt correction of errors, bolsters the trial court record, aids appellate review, and militates against unnecessary appeals.

Like most claims, departure claims are subject to the requirement of issue preservation in the trial court on pain of waiver. In *Bishop*, this Court endorsed the framework for preserving departure claims adopted by the New Mexico Supreme Court in *State v. Gomez*, 932 P.2d 1 (N.M. 1997). This framework "distinguishes between instances in which established state court precedent construes a provision of the state constitution to provide more protection than its federal counterpart and scenarios in which there is no such precedent." *Bishop*, 217 A.3d at 840. When there is precedent supporting departure "in the relevant regard[,]" *id*. at 836, "the claim may be preserved by (1) asserting the constitutional principle that provides the protection sought under the [state] Constitution, and (2) showing the factual basis needed for the trial court to rule on the issue[,]" *id*. at 840, *quoting Gomez*, 932 P.2d at 8. On the other hand, "[w]here there is no precedent supporting departure, 'a party also must assert in the trial court that the state constitutional provision at issue should be interpreted more expansively than the federal counterpart and provide reasons for interpreting the state provision differently from the federal provision.'" *Id*., *quoting Gomez*, 932 P.2d at 8 (emphasis omitted). "References to the state constitution, without some discussion or argument concerning the scope of its protections, are not enough to alert the trial court to the issue of a possible difference between the rights afforded by the state constitution and those provided by the [federal charter]." *Id.* at 840-41, *quoting Gomez*, 932 P.2d at 10. "[S]ome analysis

explaining the grounds for departure is required." *Id.* at 840; *see also id.* at 841 n.7 ("At a minimum, . . . the defendant must offer some reasonably developed, colorable analysis that would support departure.").

Here, as Shivers acknowledges, he is raising a departure claim. *See* Shivers's Brief at 42; Reply Brief at 1. He concedes that pursuant to *Wardlow*, a suspect's flight in a high-crime area is sufficient to establish reasonable suspicion for an investigative detention under the Fourth Amendment. However, he insists flight in a high-crime area is not sufficient to demonstrate reasonable suspicion under the greater protections afforded by Article I, Section 8:

> In [*Wardlow*], the United States Supreme Court held that flight in a high[-]crime area, but not in other areas, provides reasonable suspicion for a police pursuit and stop. Since then, the Superior Court has applied this Fourth Amendment framework to Article I, Section 8. This Court should reject that conclusion and hold that under Article I, Section 8 flight in a high[-]crime area by itself does not provide the requisite reasonable suspicion for the police intrusions. *Wardlow* is inconsistent with the heightened privacy and personal securities protections guaranteed by Pennsylvania's independent Constitution.

Shivers's Brief at 6.

Importantly, though, there is no precedent supporting the departure Shivers seeks. No Pennsylvania case has ever held Article I, Section 8 departs from the Fourth Amendment "in the relevant regard" — that is, regarding the circumstances sufficient to establish reasonable suspicion. *Bishop*, 217 A.3d at 836. To the contrary, "for decades" this Court has repeatedly indicated the state and federal constitutions "are coextensive regarding the quantum and nature of evidence required for a stop[,]" such that what suffices to permit a *Terry* stop under the Fourth Amendment is likewise adequate under Article I, Section 8. *Commonwealth v. Lewis*, 343 A.3d 1016, 1029 (Pa. 2025) (quotations and citation omitted); *see also Interest of T.W.*, 261 A.3d 409, 418 (Pa. 2021) ("Pennsylvania has always followed *Terry* in stop and frisk cases.") (quotation and citation

omitted); *Commonwealth v. Grahame*, 7 A.3d 810, 816 (Pa. 2010) ("Pennsylvania courts have always followed *Terry* regardless of whether the appellant's claim was predicated on the Fourth Amendment or Article I, Section 8 of the Pennsylvania Constitution."); *Commonwealth v. Brown*, 996 A.2d 473, 476 (Pa. 2010) ("[T]his Court has held that federal jurisprudence, specifically [*Terry*], sets forth the reasonableness standard for Article I, §8 of the Pennsylvania Constitution."); *In re D.M.*, 781 A.2d at 1163 ("Pennsylvania courts have consistently followed *Terry* in stop and frisk cases, including those in which the appellants allege protections pursuant to Article [I], Section 8 of the Pennsylvania Constitution."); *Commonwealth v. Wimbush*, 750 A.2d 807, 810 n.2 (Pa. 2000) ("We note that Pennsylvania has consistently followed Fourth Amendment jurisprudence in stop and frisk cases."); *Commonwealth v. Jackson*, 698 A.2d 571, 573 (Pa. 1997) ("Pennsylvania has always followed *Terry* in stop and frisk cases[.]"). Accordingly, pursuant to *Bishop*, in order for Shivers to preserve his departure claim for appellate review, he was required to provide the trial court with some analysis explaining why the protections under Article I, Section 8 should exceed those under the Fourth Amendment regarding the circumstances adequate to demonstrate reasonable suspicion for an investigative detention.

Shivers did not comply with this mandate. His form omnibus motion merely included preprinted language asserting "[t]he evidence was obtained in violation of the defendant's U.S. Constitutional rights or independently protected rights secured by the Pennsylvania Constitution or Pennsylvania Rules of Criminal Procedure[.]" Omnibus Motion, 9/19/19, at 1 (unpaginated). This vague reference to the state constitution did not even specify Shivers was relying on Article I, Section 8. Nor did it contend the state constitution should be construed more expansively than the federal charter; independent rights are not necessarily broader rights. In any case, his form motion did not offer any

sort of analysis as to why the Pennsylvania Constitution should be interpreted to provide greater protections than the United States Constitution.

Subsequently, at the beginning of the suppression hearing, Shivers explained he was bringing his "motion to suppress under the 4th and the 14th Amendments of the U.S. Constitution as well as the broader protections of the Pennsylvania Constitution, Article One Section Eight." N.T. Suppression Hearing, 11/16/20, at 3. This explanation added a modicum of meat to the bare bones of his motion to suppress: it specified he was relying on Article I, Section 8, and maintained this provision offered broader protections than the corresponding provisions of the federal charter. However, here too Shivers neglected entirely to provide any sort of analysis as to why our constitution is supposedly more protective than the United States Constitution in this context. At the conclusion of the hearing, in argument on the motion, the Commonwealth squarely argued that reasonable suspicion was established by Shivers's "[f]light in a high-crime area[.]" *Id.* at 25. Shivers was presented with a clear and obvious opportunity to make his present departure claim that flight in a high-crime area is insufficient to support reasonable suspicion under Article I, Section 8. Yet he did not make it.[7]

Shivers also failed to preserve his departure claim in his motion to compel or the hearing on this motion. Indeed, his arguments in support of his motion to compel suggested consideration of the high-crime-area factor was permitted under the Pennsylvania Constitution to the same extent it is allowed under the United States Constitution. His motion alleged that post-*Wardlow*, "'high[-]crime areas' have become a fact of constitutional law[.]" Motion to Compel at ¶6. Similarly, he indicated at the hearing

---

[7] When the suppression court subsequently denied Shivers's suppression motion on the basis his "unprovoked flight in a high[-]crime area gave the officers reasonable suspicion to pursue and stop him[,]" Shivers again stood silent. N.T. Motions Hearing, 2/10/21, at 6.

that the "phrase" high-crime area "has a Constitutional legal meaning now . . . under the Fourth Amendment and Article [I], Section 8 of the Pennsylvania Constitution[.]" N.T. Motion to Compel Hearing, 1/10/20, at 5. It was not until this case was pending on appeal to the Superior Court that Shivers first raised his departure claim in his Rule 1925(b) statement. *See* Statement of Errors Complained of on Appeal, 3/21/22, at ¶7iii.[8]

Thus, at most, Shivers simply asserted in the trial court that Article I, Section 8 should be interpreted more expansively than the Fourth Amendment. But he never developed any semblance of an analysis substantiating departure as required by *Bishop*. Consequently, his departure claim is waived.[9]

---

[8] Shivers's Rule 1925(b) statement only accentuates his failure to preserve his departure claim in the trial court. Again, in his Rule 1925(b) statement, Shivers contended:

> This Court violated [Shivers's] rights under Article I, Section 8 of [sic] Pennsylvania Constitution by holding that police had reasonable suspicion to seize [Shivers] by chasing and tackling him merely because he fled from them in a so-called high[-]crime area. That the seizure occurred in a high[-]crime area should be irrelevant under the Pennsylvania Constitution because that factor unreasonably denies citizens living in those areas the same search and seizure protections of those who are fortunate enough to live in areas with less crime. Further, "high[-]crime area" is a vague factor incapable of an acceptable nonarbitrary factual determination necessary to determine an individual's constitutional rights. The Pennsylvania Constitution is more protective than the U.S. Constitution in protecting individuals from unwanted intrusion by police particularly those involving seizure of the person. *See, e.g.*, *Commonwealth v. Matos*, 672 A.2d 767 (Pa. 1996).

Statement of Errors Complained of on Appeal, 3/21/22, at ¶7iii. This argument clearly raised and amply developed his departure claim. Nothing remotely like it appears anywhere in the record of the trial court proceedings.

[9] Justice Donohue insists this case does not involve a waiver under *Bishop* but rather a "classic waiver under [Pa.R.A.P.] 302." Concurring and Dissenting Opinion at 2 (Donohue, J.). She maintains Shivers "did not raise the specific issue at hand — that the reasonable suspicion standard could not be met with evidence of unprovoked flight in a high-crime area — in the trial court." *Id.* at 4. According to Justice Donohue, Shivers's "focus was on the development of the challenge to the high-crime area designation and rebutting the factual assertion that Shivers was found in a high-crime area[,]" and he "did (…continued)

Shivers's arguments otherwise are unpersuasive. He contends "[r]easons were provided in the lower court for a departure under Pennsylvania's Constitution[.]" Shivers's Brief at 42. To the extent his opaque reference to the "lower court" is meant to connote the trial court — the court in which the claim must be preserved under *Bishop* — this claim is demonstrably false. At no point in the proceedings before the trial court did Shivers ever give reasons for departing from federal law under the state charter. As the Commonwealth rightly observes, "[e]xactly the opposite is true, as the record confirms[.]" Commonwealth's Brief at 10. "[C]ounsel's approach of . . . no[t] offering any reasons [to the trial court] for departing was the antithesis of meaningful development." *Bishop*, 217 A.3d at 843.

Moreover, the fact the Superior Court has previously "rejected the Article I, Section 8 claim presented here" did not obviate Shivers's obligation to present some analysis in support of departure. Shivers's Brief at 42-43. In *Bishop*, this Court "accept[ed] that the presentation can be truncated in futility scenarios (*i.e.*, where the reviewing court is bound by a contrary ruling of a higher court), [but] reinforce[d] [its] agreement with the Supreme Court of New Mexico that mere citation to a provision of the state constitution is

---

not preserve a challenge to the reasonable suspicion analysis built on unprovoked flight in a high-crime area." *Id.* In fact, Shivers claimed reasonable suspicion was lacking in the trial court. His motion to suppress alleged he was subjected to a stop on less than reasonable suspicion. *See* Omnibus Motion, 9/19/19, at 1 (unpaginated). In addition, he asserted at the commencement of the suppression hearing that "there was no justification for the stop, frisk, search, or arrest . . . , and that the Commonwealth lacked any probable cause or reasonable suspicion." N.T. Suppression Hearing, 11/16/20, 3-4. Further, at the close of the suppression evidence, he reiterated: "there is no legal justification at that point to stop him, frisk him, chase him. It's a pre-textual stop and there is zero justification for it." *Id.* at 23; *see also id.* at 24 ("They had no suspicion to be there. They knew these guys so they went to stop them."). Shivers preserved a challenge to reasonable suspicion in the trial court. What he did not preserve, however, and what has given rise to his departure waiver, is the claim that reasonable suspicion is more demanding under Article I Section 8 such that unprovoked flight in a high-crime area, while sufficient to establish reasonable suspicion under the Fourth Amendment, is inadequate to meet this standard under the Pennsylvania Constitution.

insufficient." *Bishop*, 217 A.3d at 841 n.9. In other words, per *Bishop*, the argument for departure can be abbreviated in circumstances where precedent forecloses relief in the trial court but not nonexistent. Here, it was nonexistent; there was no analysis whatsoever.

Shivers's reliance on *Alexander* is misplaced as that case is distinguishable. There, Alexander claimed this Court should "overrule or limit" *Commonwealth v. Gary*, 91 A.3d 102 (2014) (opinion announcing judgment of Court). *Alexander*, 243 A.3d at 180. *Gary* "adopt[ed] the federal automobile exception to the warrant requirement" for purposes of Article I, Section 8. *Gary*, 91 A.3d at 104. The federal automobile exception "allows police officers to search a motor vehicle when there is probable cause to do so and does not require any exigency beyond the inherent mobility of a motor vehicle." *Id.* "[P]rior to *Gary*, this Court's precedents clearly held that Article I, Section 8 did offer greater protections than the Fourth Amendment" regarding car searches. *Alexander*, 243 A.3d at 187. Specifically, "Pennsylvania recognized an automobile exception, but unlike its federal counterpart, ours was 'limited' in application." *Id.* at 187-88. There were "decades of cases decided by majorities [of this Court] which held that Article I, Section 8 does in fact differ from federal law." *Id.* at 200. *Gary* did not nullify this precedent. To be sure, a three-Justice plurality in *Gary* concluded Article I, Section 8 "affords no greater protection than the Fourth Amendment" with regard to car searches. *Gary*, 91 A.3d at 104. However, "Justice Saylor's concurring opinion provided the crucial fourth vote that allowed *Gary* to constitute a binding holding as opposed to establishing only a case-specific result limited to *Gary* alone." *Alexander*, 243 A.3d at 197. Justice Saylor did not endorse the federal automobile exception based on the rationale that the state and federal charters were coextensive but rather "for the sake of certainty and consistency[.]" *Gary*, 91 A.3d at 138 (Saylor, J., concurring). Accordingly, the *Alexander* Court explained, "[i]t

is undeniable that *Gary* did not produce a majority holding on what our constitution means." *Alexander*, 243 A.3d at 199. "*Gary* . . . did not decide the Article I, Section 8 question." *Id.*; *see also id.* at 201-02 ("*Gary* . . . did not actually decide the impact of Article I, Section 8 on automobile searches.").

Thus, in *Alexander*, unlike in this case, there was "precedent supporting departure." *Bishop*, 217 A.3d at 840. As a consequence, in order for Alexander to preserve his departure claim in the trial court under the *Bishop* framework, he simply needed to invoke the constitutional principle providing the protection sought under the Pennsylvania Constitution, and show the factual basis needed for the trial court to rule on the issue. *See id.* A majority of this Court concluded Alexander complied with these modest requirements.[10] He invoked Article I, Section 8, argued the state provision offered broader protections than the Fourth Amendment, alleged the police could have obtained a warrant but failed to do so, and developed a factual record at the suppression hearing supporting relief. *See Alexander*, 243 A.3d at 193 n.8. Here, on the other hand, where there is no precedent supporting departure, Shivers was required under *Bishop* to provide "some analysis explaining the grounds for departure[.]" *Bishop*, 217 A.3d at 840. As discussed, he did not do so.[11]

---

[10] This author disagreed on that point. *See Alexander*, 243 A.3d at 213 n.1, 215 n.4 (Dougherty, J., dissenting) (concluding Alexander waived his departure claim).

[11] According to Justice Donohue, our opinion "does nothing to clarify the application of *Bishop*, it further muddles it." Concurring and Dissenting Opinion at 5 (Donohue, J.). We respectfully disagree. As amply demonstrated by the parties' briefs, uncertainly regarding how to apply *Bishop* emerged after our decision in *Alexander*. *Compare* Shivers's Brief at 43 ("This case presents a question of waiver in substantially the same context as in [*Alexander*], one different from the earlier decision in *Bishop*.") *with* OAG's Brief at 11 ("*Bishop* is particularly relevant.") *and* Commonwealth's Brief at 10-11 ("[I]t is difficult to reconcile *Alexander*'s approach to the preservation issue with the exacting requirements that this Court carefully laid out the year before in *Bishop*[.]"). We herein clarify that there is no tension between the two decisions.

Finally, Shivers's waiver is not cured by the trial court and Superior Court opinions addressing his departure claim "on the merits." Shivers's Brief at 47; Reply Brief at 3. Merits consideration on appeal does not somehow retroactively preserve a departure claim foregone in the trial court. In fact, in *Bishop*, the departure claim was addressed on the merits on appeal. There, the departure claim was that Article I, Section 9 provided greater protection than its federal counterpart, the Fifth Amendment, insofar as the state provision requires the suppression of physical evidence recovered as a result of a statement elicited in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). The Superior Court rejected this claim on the merits, holding "there is no precedent in this Commonwealth indicating that the Pennsylvania Constitution extends greater protection than its federal counterpart with respect to the Fifth Amendment right against self-incrimination in the context of physical evidence obtained as a result of or during the course of an unwarned statement." *Bishop*, 217 A.3d at 837, *quoting Commonwealth v. Bishop*, No. 1193 EDA 2016, slip op. at 9. Nonetheless, this Court held that "because [Bishop] did not distinguish between the Fifth Amendment and Article I, Section 9 **before the suppression court**, his claim favoring departure is waived." *Id.* at 841 (emphasis added).

In sum, Shivers's departure claim is waived under *Bishop*.[12] For this reason, we affirm the order of the Superior Court affirming the denial of suppression.

---

[12] Justice Donohue asserts that even "[i]f this case actually presented a *Bishop* question," she would find Shivers's "failure to follow its nebulous requirements was not fatal to his appeal." Concurring and Dissenting Opinion at 2 (Donohue, J.). Her denunciation of *Bishop* is surprising. At the time *Bishop* was decided, Justice Donohue did not criticize its requirements as "nebulous" or otherwise take issue with the opinion. *Id.* On the contrary, she "join[ed] in the Majority opinion, as [she] ha[d] no fundamental disagreement with the issue preservation rule espoused by the Majority therein." *Bishop*, 217 A.3d at 844 (Donohue, J., concurring). In any event, to the extent her view on the matter has now changed, this does not strip *Bishop* of its precedential force. *Stare decisis* commands adherence to "even questionable decisions" because it "'promotes the (…continued)

Chief Justice Todd and Justices Mundy, Brobson and McCaffery join the opinion.

Justice Wecht files a concurring opinion.

Justice Donohue files a concurring and dissenting opinion.

---

evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Alexander*, 243 A.3d at 196, *quoting Payne v. Tennessee*, 501 U.S. 808, 827 (1991). "To reverse a decision, we demand a special justification, over and above the belief that the precedent was wrongly decided." *Id., quoting Allen v. Cooper*, 589 U.S. 248, 259 (2020). Justice Donohue does not identify any such special justification for overruling *Bishop*.